**General Civil and Domestic Relations Case Filing Information Form**

Fulton County Superior Court
***EFILED***QW
Date: 5/21/2026 10:41 AM
Che Alexander, Clerk

☑ **Superior or** ☐ **State Court of** Fulton _____ **County**

| **For Clerk Use Only** | |
|---|---|
| **Date Filed** 5/21/2026 | **Case Number** 26CV007338 |
| **MM-DD-YYYY** | |

**Plaintiff(s)**

Waites, Joshua

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

Carr, Christopher

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

Fowler, John

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

McGowan, Blair

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Plaintiff's Attorney** Stacey G. Evans        **Bar Number** 298555        **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contract
- ☐ Garnishment
- ☑ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____ Case Number        _____ Case Number

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
_____
_____

Version 1.1.18

Fulton County Superior Court
***EFILED***QW
Date: 5/21/2026 10:41 AM
Che Alexander, Clerk

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| JOSHUA WAITES,<br><br>    Plaintiff,<br><br>v.<br><br>CHRISTOPHER CARR, individually and in his official capacity as Attorney General of Georgia, JOHN FOWLER, individually and in his official capacity as Deputy Attorney General of the Prosecution Division of the Georgia Attorney General's Office, and BLAIR McGOWAN, individually and in her official capacity as Sr. Assistant Attorney General and Section Chief of the Criminal Prosecution Section of the Georgia Attorney General's Office,<br><br>    Defendants. | Civil Action No. ___26CV007338___<br><br><br>JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT**

Joshua Waites sues Christopher Carr, individually and in his official capacity as Attorney General of Georgia, John Fowler, individually and in his official capacity as Deputy Attorney General of the Prosecution Division; and Blair McGowan, individually and in her official capacity as Sr. Assistant Attorney General and Section Chief of the Criminal Prosecution Section, for malicious prosecution, tortious interference, and constitutional violations.

**Introduction**

1.     The Defendants wrongfully brought a criminal case against Waites, a former director of the Office of Special Investigation for the Georgia Department of Revenue, based on a single line in a job application and a forwarded email.

2.     A grand jury unanimously found that the charges amounted to a "malicious prosecution."[1]



3.     But the grand jury's "malicious prosecution" finding hasn't stopped Carr from continuing to hurt Waites.

4.     Even after the grand jury's decision, when Waites gets a new job, usually as a fraud investigator, someone from the Defendant's office tells Waites's new employer that he is under investigation for fraud, so he loses the job opportunity. This hasn't happened just once or twice but four times—a continuing malicious prosecution and campaign of tortious interference.

5.     This happens even though the statute of limitations on potential claims against Waites has long expired.

6.     Thus, either the claim that Waites is under investigation is false or any ongoing investigation could only be for malicious purposes.

### Parties, Jurisdiction & Venue

7.     Plaintiff Joshua Waites is an adult citizen and resident of Georgia.

8.     Defendant Christopher Carr is the Attorney General of Georgia. Under O.C.G.A. § 50-21-35, Carr may be served with process through Chief Deputy Attorney General Wright Banks and Deputy Attorneys General Loretta Pinkston-Pope and Logan Winkles at 40 Capitol Square, S.W., Atlanta, Georgia 30334.

---

[1] *See* Ex. 1, No Bill, *State v. Waites*, No. D0287257 (DeKalb Super. Ct. Feb. 1, 2022).

9.     Defendant John Fowler is the Deputy Attorney General of the Prosecution Division of the Georgia Attorney General's Office, which is the division responsible for the prosecution of Waites. Fowler may be served with process at 40 Capitol Square, S.W., Atlanta, Georgia 30334.

10.     Defendant Blair McGowan was the Sr. Assistant Attorney General and Section Chief of the Criminal Prosecution Section of the Georgia Attorney General's Office, which is the section within the Prosecution Division responsible for the prosecution of Waites. McGowan may be served with process at 822 Greenwich Street, #1C, New York, New York, 10014, or wherever she may be found.

11.     Under O.C.G.A. § 15-6-8, the Court has subject-matter jurisdiction.

12.     Waites satisfied O.C.G.A. § 50-21-26 by providing sufficient notice of claim.[2] The notice details how Carr and his office targeted Waites and the ongoing damage that he is causing Waites. In the months since then, Carr has not responded to Waites's notice of claim.

13.     Venue is proper under O.C.G.A. § 50-21-28.

## Factual Allegations

### *Waites does his job, which creates problems for certain well-connected individuals*

14.     Waites dedicated his life to law enforcement. But when he helped secure fraud convictions against Todd and Julie Chrisley—self-styled reality TV stars—who are so conservative and connected that they recently were pardoned by President Donald Trump, Waites became the target of what a grand jury would unanimously find to be a "malicious prosecution."

15.     Waites also regularly led investigations of the coin operated amusement machines (COAM) industry.

---

[2] *See* Ex. 2, Notice Pursuant to O.C.G.A. § 50-21-26 (July 7, 2025).

16. The Chrisleys and COAM industry players wanted Waites out of law enforcement because he helped the government secure convictions and win judgments against them, and Carr's office made it happen.

17. Since then, Carr's and his office's continuing malicious prosecution has cost Waites four jobs, his good name, and his livelihood.

### *Waites has over 60 college-credit hours, which satisfies the requirements for an associate's degree, over 2,200 hours in training, and several advanced certifications.*

18. Waites got his start in law enforcement at Northwest Florida State College, where he spent some 800 hours in law-enforcement training. In Florida, students like Waites who get law-enforcement training at a college also get college credits. Waites earned over 60 college-credit hours for his training.

19. In Florida and in Georgia, an associate's degree comprises 60 total credit hours.[3] With over 60 credit hours, Waites met the requirements for an associate's degree in Florida and Georgia. So, in effect, he had an associate's degree before he left Florida.

20. After completing his training in Florida, Waites moved to Georgia. In Georgia, he began working for the Clayton County Police Department. He completed another 400 hours of training at the Clayton Regional Law Enforcement Center.

21. On top of that, Waites completed hundreds more hours in advanced training. He is a certified law-enforcement instructor and a certified fraud examiner. He has advanced training in internal-affairs investigations, and he completed the FBI's executive development course.

22. In 2010, Waites moved from the police department to the sheriff's office. There, he began investigating illegal gambling and racketeering. One of his early

---

[3] *See* Fla. Dep't Edu., *Florida College System,* https://www.fldoe.org/schools/higher-ed/fl-college-system/academics/ (last visited Dec. 3, 2025); Univ. Sys. Ga., *Board of Regents Policy Manual* § 3.8.1, https://www.usg.edu/policymanual/section3/C343 (last visited Dec. 3, 2025).

cases led to the first federal gambling conviction in Georgia history. And that cemented him as a commercial gambling expert.

23.    Three years later, the Georgia Department of Revenue hired Waites as chief investigator. He soon focused on tax evasion in the gambling industry. So widespread was the evasion that it became a full-time job for a revenue agent assigned to the Georgia Bureau of Investigation's commercial gambling unit.

24.    Waites was eventually promoted to assistant director of the Office of Special Investigations. The next year, he was directly appointed as director because of his stellar performance. A college degree was not one of the job requirements for that position.

25.    Some directors in the Department of Revenue do not have college degrees.

26.    Some directors in the Department of Revenue did not have college degrees in 2015.

27.    Waites was offered the director position during a lunch meeting with a deputy commissioner in 2015. He accepted the direct appointment on the spot and assumed the role the next week.

***Waites completes a second job application—a formality for his employment file—and continues getting excellent reviews and merit-based pay raises.***

28.    In 2015, human resources asked Waites to complete another job application for the file. It was a formality.

29.    Waites had already completed an application in 2013, when he was first hired. In that application, he wrote "in progress" in the section of the application that asked about degrees. But since he had more than 60 college credit hours and over 2,200 training hours, he selected "degree AAS" in the 2015 application. He did so because he meets the requirements for an associate's degree.

VERIFIED COMPLAINT                                                    Page—5

30.     For the next four years, Waites served as director, earning excellent reviews the entire time and several merit-based pay raises. He served on Commissioner Riley and Commissioner Curry's executive councils and among their senior staff.

31.     Meanwhile, Waites's 2015 application sat in his file for years. No one, on information and belief, even read the application until attorneys acting on behalf of the Chrisleys and certain COAM companies requested Waites's personnel file.

### *Waites forwards an email and omits non-responsive, incorrect portions of the original email.*

32.     In 2019, the Department of Revenue, like other state agencies, had a forfeiture account. Its general counsel had issued an opinion approving the forfeiture account.

33.     Waites thought that it might be prudent to use forfeiture funds to hire a sophisticated prosecutor to serve as a special assistant attorney general to prosecute tax cases because training local prosecutors on the nuances of tax evasion was inefficient.

34.     A deputy commissioner asked Waites whether that would be a permissible use of forfeiture funds. And Waites said that he would ask the Prosecuting Attorneys' Council of Georgia, since it provides training on the topic.

35.     Waites called the Council's director about this use of funds. The director confirmed that the proposed use was permissible.

36.     Waites also emailed the director, who again confirmed that using forfeiture funds to pay for a special prosecutor would be an appropriate use of the funds.

37.     But the director added in his email a non-responsive, incorrect statement to the effect that state agencies are not allowed to have forfeiture accounts. By statute, state agencies may have forfeiture accounts.[4] Several state agencies do in

---

[4] *See* O.C.G.A. §§ 9-16-10, 9-16-19.

fact have forfeiture accounts, including the Georgia Bureau of Investigation, Secretary of State, and Department of Community Supervision. Carr's own office has a forfeiture account.

38.    Waites forwarded the director's email to the deputy commissioner, omitting the non-responsive, incorrect portion of the email.

### Carr cooks up bogus charges against Waites.

39.    In early 2020, someone from the Inspector General's office called Waites and started grilling him about his 2013 and 2015 job applications that attorneys for the Chrisleys and certain COAM companies had requested.

40.    By then, Waites's working environment had become so caustic that he called Commissioner Curry to resign and give his two weeks' notice. The Commissioner told him that the problem was "coming from downtown." On the next-to-last day of the notice period, Waites was fired.

41.    Carr prosecuted Waites for "False Statements and Writings, O.C.G.A. § 16-10-20" and "Forgery in the First Degree, O.C.G.A. § 16-9-1(b)."[5]

42.    The false statements charge centers on Waites's 2015 job application—the one he completed as a formality for the file after starting the job.

43.    Waites did not lie in the application.

44.    He had already completed an application in 2013, when he was first hired. In that application, he wrote "in progress" in the section that asked about degrees.

45.    But since he had more than 60 college credit hours and over 2,200 training hours—far more than what's required for an associate's degree—he selected "degree AAS" in the 2015 application.

---

[5] Ex. 1, No Bill, *State v. Waites*, No. D0287257 (DeKalb Super. Ct. Feb. 1, 2022).

46.     Under Georgia law, false statements are felonies that carry a sentence of incarceration for at least one year and up to 5 years, fines, or both.[6]

47.     For the false-statements charge, Carr's office told the grand jury that the "crime was unknown until at least January 24, 2020."[7]

48.     But the state knew about the application in 2015.

49.     Making knowingly false statements in an indictment is evidence of malice.

50.     No Georgia statute says that a mistake on a job application is a crime.

51.     No Georgia court has ever held that making a mistake on a job application is a crime under O.C.G.A. § 16-10-20.

52.     The forgery charge was based on a forwarded email. Again, a deputy revenue commissioner asked Waites whether using forfeiture funds to hire a sophisticated prosecutor as a special assistant attorney general for tax cases would be an appropriate use of the funds. The director of the Prosecuting Attorneys' Council of Georgia confirmed that doing so would be appropriate. But the director added in his email a non-responsive, incorrect statement to the effect that state agencies are not allowed to have forfeiture accounts, which clashes with O.C.G.A. §§ 9-16-10 and 9-16-19. Waites forwarded the director's email, omitting the non-responsive, incorrect portion of the email.

53.     Under Georgia law, first-degree forgery is a felony that carries a sentence of incarceration for at least one year and up to 15 years.[8]

54.     Omitting non-responsive misinformation from a forwarded email is, in Carr's view, first-degree forgery under O.C.G.A. § 16-9-1(b).

---

[6] O.C.G.A. § 16-10-20.

[7] Ex. 1, No Bill at 3.

[8] *See* O.C.G.A. § 16-9-2(a).

55.     No Georgia statute requires people to forward non-responsive, incorrect portions of emails.

56.     No Georgia statute says that omitting non-responsive, incorrect statements in a forwarded email is forgery.

57.     No Georgia statute says that forwarding a relevant excerpt of an email is first-degree forgery.

58.     No Georgia court has ever held that forwarding a relevant excerpt of an email is first-degree forgery under O.C.G.A. § 16-9-1(b).[9]

59.     In short, Carr tried to get a false conviction that would likely land Waites in prison for at least five years. And a grand jury indictment would help him get it.

### *The grand jury is unanimous—"malicious prosecution."*

60.     Grand juries reject only the most obviously bogus charges. Thus the saying, "Any good prosecutor can get a grand jury to indict a ham sandwich."[10]

61.     In late 2021, Carr's office sent Waites a letter telling him that it would be "presenting evidence and a proposed bill of indictment" to the grand jury.[11] The letter says, in part, "the case shall proceed as in any other criminal case heard by a grand jury, except that you shall be permitted to testify at the conclusion of the State's case-in-chief and that you shall only be present in the grand jury room when you are testifying." The letter adds that Waites "may be questioned by the prosecuting attorney or members of the grand jury," but his attorney would not be allowed to ask questions or make objections.

---

[9] *Rowan v. State* has no bearing here because the defendant there signed his partner's name without consent and then changed the content of an email to mislead investigators. 338 Ga. App. 773, 775 (2016). Waites did nothing of the sort, and Carr knew that at all relevant times.

[10] Chief Justice Sol Wachtler, New York Superior Court (1985).

[11] Ex. 3, Letter from Blair McGowan, Senior Assistant Attorney General, to Joshua Waites (Nov. 5, 2021).

VERIFIED COMPLAINT                                                    Page—9

62. Carr's office spent several hours laying out the charges it had leveled against Waites. To put this in context, in 2020, DeKalb County, where the grand jury sat, had at least 128 homicides; in 2021, the county set a new record with 135 homicides. Yet prosecutors spent an outsized portion of the grand jury's time on a single line in a job application and a forwarded email.

63. To be honest with the grand jury about Georgia law, Carr's office needed to tell the jurors that, as the Georgia Supreme Court explained, "[i]f all it took for a Georgia citizen to be convicted of a felony was the convergence of a lie and a government agency's jurisdiction over the subject matter of the lie, a wide swath of communication would be criminal."[12]

64. In any event, Waites appeared before the grand jury and answered every question the jurors posed. He answered every question the prosecutor posed. He hid nothing. And he did not invoke his Fifth Amendment right against self-incrimination. The reason for all that is simple: he committed no crime, and he knew that Carr's office was trying to hoodwink the grand jury.

65. The Prosecuting Attorneys' Council provides a grand jury handbook for prosecutors to use.[13] The handbook defines "malicious prosecution":

> **Malicious Prosecution**
> A criminal prosecution initiated by a person for malice or spite when probable cause does not exist to believe that the defendant committed the offense charged.

It also defines "no bill":

> **No Bill**
> A finding made by the Grand Jury on a bill of indictment or special presentment after hearing the evidence, that the charges against the accused are groundless or the evidence is insufficient to present an issue for trial.

---

[12] *Haley v. State*, 289 Ga. 515, 519–20 (2011); *see also id.* at 521–22 (noting "due process problems" and "serious constitutional concerns" with such a broad rule).

[13] Grand Jury Handbook, https://pacga.org/wp-content/uploads/2024/12/Grand-Jury-Handbook-8.5-x-11-Printer-Friendly-.pdf (last visited Dec. 12, 2025).

A "true bill" is the opposite of a no bill; a true bill means that the grand jury found "probable cause to believe that the accused committed the alleged act."

66.    The grand jury heard Carr's evidence against Waites and voted unanimously for a no bill, finding that the charges were not only groundless but also malicious.

67.    The grand jury necessarily found that "probable cause does not exist to believe that [Waites] committed the offense[s] charged."

68.    The bill of indictment that Carr's office presented to the grand jury said nothing about malicious prosecution.

69.    But the grand jury wrote on the face of the no bill that this was a "malicious prosecution."[14]

70.    The handbook specifically authorizes that finding: "If in finding a *no bill*, the Grand Jury concludes that the indictment was unfounded or malicious, the Grand Jury may endorse the indictment as a *malicious prosecution*, in which case the person instigating the prosecution (the prosecutor) will be compelled to pay all costs for bringing the unfounded charge."

71.    The no bill should have been the end of the matter, but it wasn't.

### *Carr causes Waites to lose at least four jobs.*

72.    Even after the grand jury made clear that Waites's prosecution was "malicious," Carr took further steps to wrongfully interfere with Waites's business relationships, jeopardizing his livelihood.

73.    For example, in 2022, Key Bank hired Waites as senior operations manager.

74.    One of Carr's agents, on information and belief, sent an unsolicited letter or email to Key Bank that, in effect, accused Waites of crimes.

---

[14] *See* Ex. 1, No Bill.

75.    The communication with Key Bank hid the fact that the grand jury had unanimously refused to indict Waites and had unanimously found that the charges against him amounted to a "malicious prosecution."

76.    Waites was fired immediately.

77.    In 2023, Morgan Stanley hired Waites as a vice president of fraud strategy, a position with a starting salary of $160,000 per year.

78.    Waites passed a background check, and Morgan Stanley sent him all the equipment needed for the job.

79.    On his first day, Morgan Stanley withdrew Waites's job offer.

80.    Later that year, City National Bank hired Waites as a fraud manager.

81.    Waites passed a background check.

82.    On his first day of work, City National Bank withdrew Waites's job offer.

83.    In 2024, the Spalding County Sheriff's Office offered Waites a job.

84.    In July 2024, Defendant John Fowler, acting in his official capacity as Deputy Attorney General of the Prosecution Division, falsely represented to the Spalding County Sheriff's Office that Waites remained under active investigation for fraud.

85.    As a direct result of Fowler's false and stigmatizing representation, the Spalding County Sheriff's Office withdrew its job offer to Waites.

86.    By then, every possible statute of limitation had run on the charges Carr had made against Waites.

87.    The charges Defendants brought against Waites, which include false statements and first-degree forgery, are subject to a four-year statute of limitations under O.C.G.A. § 17-3-1(c). The alleged conduct underlying those charges occurred no later than 2020. By July 2024, the limitations period had fully run on every charge, and no prosecution of Waites on those charges could lawfully be commenced.

88.    Fowler's July 2024 statement to the Spalding County Sheriff's Office that Waites remained under active investigation for fraud therefore described a legal impossibility. No prosecution of Waites for the alleged conduct could ever be initiated. Fowler knew, or should have known, that any limitations period had long since expired.

89.    This continuous malicious prosecution has spawned an investigation by the Georgia Peace Officer Standards and Training Council that interferes with Waites's employment.

90.    This investigation is ongoing only because the Inspector General and the Attorney General are keeping their investigations open—not because it has any merit.

91.    The Attorney General is keeping the investigation open because it provides an excuse for hiding information from the public under Georgia's Open Records Act.

92.    As of April 2026, the investigation into Waites is still open, according to the Inspector General, even though the statute of limitation on any charges they could cook up against Waites lapsed long ago.

## Claims
### Claim 1—Malicious Prosecution

93.    Waites incorporates the above here.

94.    Under 42 U.S.C. § 1983, Carr, Fowler, and McGowan each acted "under color of [law]" to "depriv[e]" Waites of his Fourth Amendment "rights, privileges, or immunities secured by the Constitution."

95.    Carr, Fowler, and McGowan criminally prosecuted Waites maliciously and without probable cause.

96.    Carr, Fowler, and McGowan prosecuted Waites for false statements and first-degree forgery. The grand jury refused to indict Waites.

97.     By refusing to indict Waites, the grand jury necessarily found that there was not probable cause to believe that he had committed those crimes.

98.     By "unanimous vote," the grand jury found that Carr and his office's prosecution of Waites constituted a "malicious prosecution."

99.     Carr's office made knowingly false statements to the grand jury to manufacture probable cause. Carr's office represented to the grand jury that the "crime was unknown until at least January 24, 2020" yet the state had knowledge of Waites's 2015 job application since at least 2015. It is clearly established that officials who knowingly or recklessly make false statements to establish probable cause violate the Fourth Amendment and cannot claim qualified immunity. *Laskar v. Hurd*, 972 F.3d 1278, 1284 (11th Cir. 2020); *accord Gervin v. Florence*, 139 F.4th 1236, 1263 (11th Cir. 2025) ("any reasonable officer would know that a seizure that was constitutionally infirm because it was secured through false or misleading evidence would create damages liability no matter what kind of legal process led to that seizure").

100.     Each charge must be evaluated separately for probable cause under § 1983. Probable cause as to one charge does not insulate Carr, Fowler, and McGowan from liability for malicious prosecution on another. *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020). Both the false-statements charge and the first-degree forgery charge lacked probable cause; the grand jury rejected both as groundless and malicious.

101.     Malice is established both by the grand jury's explicit finding and by the nature of Carr's conduct. Even absent the grand jury's finding, constructive malice may be inferred from the nature of the act itself. *In re Watson*, 147 F.4th 1330, 1339 (11th Cir. 2025) ("constructive or implied malice can be found if the nature of the act itself implies a sufficient degree of malice"). Carr and his office's decision to present charges resting on a single line in a job application and a forwarded email, while

affirmatively misrepresenting to the grand jury when the state first learned of the alleged offense, implies malice as a matter of law.

102.    Although the prosecution terminated in Waites's favor, the ongoing investigation that Carr, Fowler, and McGowan and their agents tell Waites's employers about constitutes a continuous malicious prosecution.

103.    In the alternative, even if Defendants contend the prosecution has not formally terminated because their investigation nominally remains open, that position is unavailing. Defendants have kept the investigation open not because it has merit, but to justify withholding records under Georgia's Open Records Act and to sabotage Waites's employment prospects. The maintenance of a sham investigation that cannot result in prosecution is itself an act of malicious prosecution. Each false representation that Waites remains under active investigation constitutes a discrete and actionable wrong. The most recent such act occurred in July 2024, when Fowler falsely told the Spalding County Sheriff's Office that Waites remained under active investigation for fraud. This complaint is timely as to all conduct within two years preceding its filing, including that July 2024 statement.

104.    Moreover, when the statute of limitations on the underlying charges expired, the prosecution terminated in Waites's favor by operation of law. The expiration of the limitations period permanently extinguished any possibility of criminal prosecution on those charges. A prosecution that can never result in criminal liability has, in the most meaningful sense, terminated in the accused's favor. To allow the state to claim an open investigation while simultaneously conceding that the limitations period has run would permit Defendants to perpetuate a stigma against Waites in perpetuity without any lawful end.

105.    Carr, Fowler, and McGowan's actions have deprived Waites of his liberty under the Fourth Amendment and amount to an unreasonable seizure.

106.    Carr, Fowler, and McGowan's actions have deprived Waites of his liberty interest in his good name and reputation and in his livelihood.[15]

107.    As a direct and proximate result of these Fourth Amendment violations, Waites suffered damages in an amount to be proven at trial.

### Claim 2—Tortious Interference

108.    Waites incorporates the above here.

109.    Carr, Fowler, and McGowan acted wrongfully and without privilege by contacting Waites's employers to tell them he was still being investigated.

110.    Carr, Fowler, and McGowan acted purposely and maliciously with the intent to injure Waites.

111.    Defendants' improper action and wrongful conduct caused third parties to sever or to shun business relationships with Waites.

112.    As a direct and proximate result of Carr's tortious interference, Waites suffered damages in an amount to be proven at trial.

### Claim 3— Fourteenth Amendment Deprivation of Liberty Interest

110.    Waites incorporates the above here.

111.    The Fourteenth Amendment prohibits the state from depriving any person of liberty without due process of law. A government official who, acting under color of state law, makes false and stigmatizing statements in connection with a governmental employee's discharge, and who thereby alters or extinguishes a right or status previously recognized by law, deprives that person of a constitutionally protected liberty interest. *Paul v. Davis*, 424 U.S. 693 (1976); *Behrens v. Regier*, 422 F.3d 1255, 1259 (11th Cir. 2005); *Brewer v. Schacht*, 235 Ga. App. 313 (1998). Under 42

---

[15] *Cf. Thompson v. Clark*, 596 U.S. 36, 43–44 (2022) (quotations omitted) ("To determine the elements of a constitutional claim under § 1983," courts "first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted"—here, malicious prosecution—which "protected against 'injury to the person, as connected with false imprisonment' and against 'a wrong to character or reputation.'").

U.S.C. § 1983 and Article I, Section I, Paragraph I of the Georgia Constitution, Carr, Fowler, and McGowan are each liable for this deprivation.

112. On an ongoing basis, defendants and their agents have also represented to Waites's prospective employers at Key Bank, Morgan Stanley, City National Bank, and the Spalding County Sheriff's Office that Waites remains under active investigation for fraud. This representation is false. The statute of limitations on any cognizable charge has long since expired, and any purported investigation serves no legitimate law-enforcement purpose.

113. 119. These statements are of a stigmatizing nature. Labeling a certified fraud examiner and peace officer as a criminal fraud suspect under active investigation strikes at the core of his professional identity and renders him unemployable in his chosen field.

114. The false statements attended Waites's discharge from government employment. Waites served as Director of the Office of Special Investigations at the Georgia Department of Revenue, a state appointment he held with distinction, earning excellent performance reviews and merit-based raises throughout. Carr, Fowler, and McGowan, through the mechanisms of their office, instigated the Inspector General investigation that made Waites's working environment so hostile that he was constructively compelled to resign. When Waites gave notice of his resignation, the Revenue Commissioner acknowledged that the problem was "coming from downtown," that is, from Carr's office. The false and stigmatizing conduct that drove Waites from state employment was orchestrated by these defendants.

115. The false statements were made public. The criminal prosecution was a matter of public record. The communications to Waites's subsequent employers were disclosed to those employers and their agents.

116. Carr, Fowler, and McGowan acted under color of state law at all relevant times. Although they were not Waites's direct employer, liability under 42 U.S.C. §

1983 does not require the defendant to be the plaintiff's employer; it requires only that the defendant deprive the plaintiff of a federal right under color of state law. *Behrens*, 422 F.3d at 1259. Defendants exercised the official authority of the Attorney General's Office, including its prosecutorial power and its investigative apparatus, to orchestrate Waites's departure from state employment and to perpetuate false and damaging statements about him thereafter.

117.    Waites has not been afforded a meaningful opportunity to clear his name in connection with the ongoing false representations that he remains under criminal investigation. Although the grand jury unanimously vindicated Waites, finding not only no probable cause but also "malicious prosecution," defendants have deliberately suppressed and ignored that finding in their continuing communications with Waites's prospective employers. No name-clearing process of any kind has been offered or provided for the continuing false statements defendants have made since the grand jury returned its no bill.

118.    Beyond stigma, defendants' conduct has distinctly altered and extinguished rights and statuses previously recognized by state law. First, Waites lost his position as Director of the Office of Special Investigations, a formal state appointment, as a direct result of defendants' conduct.

119.    Second, and most significantly, defendants' conduct has sustained and prolonged an investigation by the Georgia Peace Officer Standards and Training Council ("POST") that threatens Waites's POST certification. His POST certification is a state-conferred legal status that entitles him to serve in law enforcement in Georgia. See O.C.G.A. § 35-8-1 et seq. That investigation exists solely because Carr, Fowler, and McGowan have kept their own investigation artificially open, not because it has any merit. By sustaining a baseless investigation to keep the POST inquiry alive, defendants have directly threatened Waites's state-recognized right to practice his profession. This is not mere reputational harm; it is the threatened

extinguishment of a formally conferred legal status, precisely the "plus" the constitutional doctrine requires. *See Ga. Dep't of Hum. Servs. v. Steiner,* 303 Ga. 890, 896-98 (2018) (the "plus" requires a showing that government action "distinctly altered or extinguished" a right or status recognized by state law).

120.   As a direct and proximate result of this Fourteenth Amendment deprivation, Waites has suffered loss of his state employment, impairment of his POST certification, loss of at least four subsequent positions, and substantial economic and reputational harm in an amount to be proven at trial.

### Claim 4—Punitive Damages

121.   Waites incorporates the above here.

122.   Carr, Fowler, and McGowan each had an evil motive or intent here or at a minimum acted with reckless or callous indifference to federally protected rights.

123.   Each Defendant's actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference.

124.   Carr, Fowler, and McGowan are each liable for punitive damages.

### Claim 5—Litigation Expenses

125.   Waites incorporates the above here.

126.   For Waites's 42 U.S.C. § 1983 claims, Carr, Fowler, and McGowan are each liable for Waites's reasonable attorney's fees under § 1988(b).

127.   Under O.C.G.A. § 13-6-11, Carr, Fowler, and McGowan have each acted in bad faith, have been stubbornly litigious, and have caused Waites unnecessary trouble and expense.

128.   Carr, Fowler, and McGowan are each liable for Waites's litigation expenses.

## Demand for Relief

Waites demands judgment in his favor awarding him—

(a)    compensatory damages under federal and state law;

(b)    nominal damages under federal and state law;

(c)    punitive damages under federal law and O.C.G.A. § 51-12-5.1;

(d)    litigation expenses under 42 U.S.C. § 1988 and O.C.G.A. § 13-6-11;

(e)    interest at the maximum rate allowable by law; and

(f)    all other relief needed to do justice.

## Jury Demand

Waites demands a jury trial on all claims asserted in this complaint.

Dated: May 21, 2026                    Respectfully submitted,

                                        /s/ *Stacey G. Evans*
                                        Stacey G. Evans
                                        Georgia Bar No. 298555
                                        Andre T. Tennille III
                                        Georgia Bar No. 940510
                                        EVANS BOWERS
                                        729 Piedmont Avenue N.E.
                                        Atlanta, Georgia 30327
                                        (404) 850-6750
                                        (404) 850-6748 (fax)
                                        sevans@evansbowers.com
                                        dtennille@evansbowers.com

                                        K. David Cooke, Jr.
                                        Georgia Bar No. 184584
                                        Jarome Gautreaux
                                        Georgia Bar No. 297336
                                        GAUTREAUX LAW LLC
                                        778 Mulberry Street
                                        Macon, Georgia 31201
                                        (478) 238-9758
                                        david@gautreauxlawfirm.com
                                        jarome@gautreauxlawfirm.com
                                        *Counsel for Plaintiff*

VERIFIED COMPLAINT                                          Page—20

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

JOSHUA WAITES,

    Plaintiff,

v.

CHRISTOPHER CARR, individually
and in his official capacity as Attorney
General of Georgia, JOHN FOWLER,
individually and in his official
capacity as Deputy Attorney General
of the Prosecution Division of the
Georgia Attorney General's Office,
and BLAIR McGOWAN, individually
and in her official capacity as Sr.
Assistant Attorney General and
Section Chief of the Criminal
Prosecution Section of the Georgia
Attorney General's Office,

    Defendants.

Civil Action No. _26CV007338____

**VERIFICATION**

Personally appeared before me the undersigned who on oath states that the facts set forth in this Verified Complaint are true and correct to the best of his knowledge and belief.

_____
Joshua Waites

Sworn and subscribed before me
this 18th day of May____, 2026.

_ansley Rawls_____
Notary Public, State of Georgia

My Commission Expires:
08-06-2029

*[Notary Seal: ANSLEY RAWLS, NOTARY, EXPIRES GEORGIA 8-6-2029, PUBLIC, UPSON COUNTY]*

VERIFIED COMPLAINT

Page—21

# Exhibit 1

FILED 02/01/2022 3:55:14 PM  Clerk of Superior Court DeKalb County

State's Witness – Richard Schneider
State Office of the Inspector General

No. _____

## DEKALB COUNTY SUPERIOR COURT

### JANUARY TERM 2022

### THE STATE

### vs

### Joshua Karl Waites

### D0287257

**Count 1: False Statements and Writings, O.C.G.A. § 16-10-20**
**Count 2: Forgery in the First Degree, O.C.G.A. § 16-9-1(b)**

# No

_____ Bill.  (Malicious prosecution)
                                    Unanimous vote

_____ Foreperson.

02/01/2022 12:43:51 PM
_____ Date.

The Defendant, Joshua Karl Waites,
waives copy of the Indictment, list of
witnesses, full panel, formal
arraignment, and pleads

_____.

This the _____ of
_____20____.

_____
Prosecuting Attorney

_____
Defendant's Attorney

_____
Defendant

STATE OF GEORGIA, COUNTY OF DEKALB

**BILL OF INDICTMENT**

IN THE SUPERIOR COURT OF SAID COUNTY,

The Grand Jurors **(GROUP A)** selected, chosen and sworn for the County of DeKalb to wit:



## COUNT 1

The GRAND JURORS aforesaid, in the name of and on behalf of the citizens of the State of Georgia, charge and accuse **JOSHUA KARL WAITES** with the offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, for that the said accused, in the County of DeKalb and the State of Georgia, on or about July 15, 2015, did knowingly and willfully use a false writing, to wit: a State of Georgia Standard Application for Employment, knowing the same to contain a false statement, to wit: that said accused had achieved the education level of AAS, in a matter within the jurisdiction of the Department of Revenue, a department of state government, contrary to the laws of said State, the good order, peace, and dignity thereof.

The crime alleged does not fall outside of the limitations on prosecution because, pursuant to O.C.G.A. § 17-3-2, the crime was unknown until at least January 24, 2020.

## <u>COUNT 2</u>

The Grand Jurors aforesaid, in the name of and on behalf of the citizens of the State of Georgia, further charge and accuse **JOSHUA KARL WAITES** with the offense of **FORGERY IN THE FIRST DEGREE**, in violation of **O.C.G.A. § 16-9-1**, for that the said accused, in the County of DeKalb and the State of Georgia, on or about September 24, 2019, did, with the intent to defraud, knowingly alter a writing other than a check, to wit: an e-mail from the Executive Director of the Prosecuting Attorneys' Council, in such a manner that the writing as altered purports to have been made by another person and by authority of one who did not give such authority, Peter Skandalakis, and said accused did utter and deliver said writing to the Georgia Department of Revenue, contrary to the laws of said State, the good order, peace, and dignity thereof.

**CHRISTOPHER M. CARR**
**Attorney General**

4

# Exhibit 2

# Evans | Bowers

STACEY G. EVANS
DIRECT DIAL:  404.850.6740
E-MAIL:  *sevans@evansbowers.com*

July 7, 2025

***Via Email and CERTIFIED MAIL, RETURN RECEIPT REQUESTED***

The Honorable Brian P. Kemp
Governor of Georgia
206 Washington St SW
Atlanta, GA 30334
Brian.kemp@georgia.gov

Risk Management Division
Georgia Department of Administrative Services
200 Piedmont Avenue SE
No. 1804W
Atlanta, GA 30334
Wade.damron@doas.ga.gov
Department of Administrative Services

Autumn Cole
General Counsel, Assistant Commissioner of Government Affairs
200 Piedmont Avenue SE
No. 1804W
Atlanta, GA 30334
Autumn.cole@doas.ga.gov
Department of Administrative Services

Christopher M. Carr
Attorney General of Georgia
40 Capitol Square SW
Atlanta, GA 30334
ccarr@law.ga.gov
Office of the Attorney General

Logan Winkles
Deputy Attorney General of the Commercial Transactions and Litigation Division
40 Capitol Square SW
Atlanta, GA 30334
Logan.winkles@law.ga.gov
Office of the Attorney General

[Continued on the following page]

July 7, 2025
Page 2

Nigel Lange
Inspector General
1102 West Tower
Atlanta, GA 30334
Nigel.lange@oig.ga.gov
Inspector.general@oig.ga.gov
Georgia Office of the Inspector General

Re:    **ANTE LITEM NOTICE PURUSUANT TO O.C.G.A. § 50-21-26 and
DEMAND FOR PRESERVATION OF EVIDENCE
Date of Incidents: July 7, 2024 (and earlier) to the present**

Dear Governor Kemp, Risk Management Division, Attorney Cole, Attorney General Carr, Deputy Attorney General Winkles, and Inspector General Lange:

Pursuant to O.C.G.A. § 50-21-26 the purpose of this letter is to provide you with notice of claims that our client, Joshua Karl Waites, intends to pursue against the Office of the Attorney General and the Georgia Office of the Inspector General.  Additionally, we are demanding the preservation of any and all evidence related to our client's claims.

If for some reason, you contend that some component of this ante litem notice fails to provide you with adequate notice of the claims which are being presented, then we would request that you provide us with such objections to the form and/or content of this notice within ten (10) days of its receipt by you.

### Notice of Claims

The Attorney General's Office ("AG") and the Georgia Office of the Inspector General ("IG") pursued a frivolous and baseless investigation and failed prosecution against our client, the former director of the Office of Special Investigation with the Georgia Department of Revenue ("OSI").

In 2019, the IG began investigating the Georgia Department of Revenue's ("GDOR") use of forfeited funds generated by the OSI. All such funds were transferred to the GDOR by Court orders.  Although the IG did not find any improprieties with the use of the funds, it did make some derogatory findings apparently to justify its use of state funds to pursue its frivolous investigation.

As the Director of OSI, our client initiated many criminal investigations into such things as tax evasion by organized criminals involved in RICO enterprises which resulted in several District Attorney Offices throughout the state making cases against these criminals. Many of the District Attorney's Offices initiated civil forfeiture cases against crime families, in which taxes were recovered and funds forfeited to the state and its agencies that participated in the civil and criminal prosecutions of such cases.

The IG's investigation is believed to have been instigated by a private attorney who, during this time, was also serving as a special assistant attorney general.  This attorney had many clients who

July 7, 2025
Page 3

were the subjects of OSI's investigations and had to forfeit funds, a portion of which ended up with the GDOR.

While not finding any real violations as to how the GDOR used the forfeited funds, the IG decided to focus its attention on our client. The IG targeted our client in an investigation that has extended for years, continuing to this very day, which is well past the statute of limitations of any possible charge. It finally issued its report that accused our client of forgery and making false statements. Mr. Waites would have been happy to be interviewed by the IG at any time to respond to these baseless allegations, but he was never allowed to be heard on these frivolous allegations and findings.

On February 1, 2022, the AG, purportedly based on the IG's report and in conjunction with the IG, presented an indictment to a DeKalb County grand jury against Mr. Waites on the counts of forgery and false statement. These charges stemmed not from any misuse of GDOR funds but from a job application that Mr. Waites completed in 2015 for a job he had already been appointed to, and for forwarding an email at the request of his manager.

Not only was the indictment a <u>No Bill</u>, but the Grand Jury marked that it unanimously agreed that it was a No Bill and also marked "<u>Malicious Prosecution</u>" (attached hereto). This unique marking means that not only did the Grand Jury unanimously determine that there was no probable cause for any crimes, but that the prosecution and its witnesses brought the case with malicious intent. Now, by keeping its investigations open, the malicious intent continues to this day.

Mr. Waites was terminated on March 10, 2020—one day before his retirement was to take effect. After his termination and within the last 12 months, Mr. Waites was denied employment and even terminated from a job because of the AG and IG's wrongful actions. The actions also resulted in a Georgia Post investigation. All of these investigations are represented to be still open to this day, well past any possible statute of limitations. These open investigations are proof of ongoing harm to Mr. Waites reputation and ability to secure meaningful employment. In the alternative, the state government actors employed by the Office of Inspector General and the Attorney General's office falsely represented that Mr. Waites was being investigated, which likely constitute separate wrongdoing by those state actors. These representations occurred on or around July 10, 2024.

## Date of Incidents Related to Claims

Mr. Waites was hired by GDOR on February 13, 2013.

Mr. Waites was terminated by GDOR on March 10, 2020.

A grand jury returned a unanimous No-Bill, agreeing that the prosecution had been brought maliciously, on February 1, 2022.

Representations were made on or around July 10, 2024 that Mr. Waites was still under investigation, resulting in the loss of job opportunities or job offers.

July 7, 2025
Page 4

Wrongdoing and injuries are ongoing due to the false public records and representations and refusal of AG and IG to correct the record and/or to close their respective cases.

### Place of Occurrence

State of Georgia.

### Nature of the Loss Suffered

The actual damages that have been caused by the wrongful acts described herein include, but are not limited to, $1,534,000.00 in lost income and employee benefits.  In summary, we are making the following demand for damages to the State:

1.  $1,534,000,00 for damages lost as a result of lost income and employee benefits in the role as Director and other lost roles as a direct result of these ongoing investigations during the relevant time period;
2.  $3 million dollars in damages for the reputational harm that has flowed to my client;
3.  $2.5 million dollars in attorneys' fees and expenses which my client is entitled to recover pursuant to O.C.G.A. § 13-6-11 and/or any other statutory authority

Total Demand:  $7,034,000 million dollars

Additionally, my client will be presenting claims for equitable relief in connection with his claims for damages.  We hereby demand the following:

1.  A complete recantation of any derogatory comments contained in the IG's Report to be included in the most prominent place in the investigative file maintained by the IG;
2.  The IG conclude its investigation marking it as closed; and
3.  That the AG close its case into our client.
4.  Georgia Peace Officers and Standards close the open investigation, clearing his record for employment.

We present these claims for your review in advance of litigation and in compliance with O.C.G.A. § 50-21-26.

### Demand for the Preservation of Evidence

In addition to providing you with notice of the claims that our client intends to present, we additionally are demanding the preservation of any and all evidence related to their claims.  This includes but is not limited to the following:

1.  All files and communications maintained by the AG's Office related to the investigation and attempted prosecution of Joshua Karl Waites;
2.  All communications and open records requests related to Mr. Waites.

July 7, 2025
Page 5

3. All files and communications maintained by the IG's Office related to the investigation of the DGOR and Mr. Waites;
4. All communications to or from Scott McAfee's cell phone, computer, and/or any electronic device related in any way to the IG's investigation into the GDOR and/or Mr. Waites, including, but not limited to, all communications with Christopher Anulewicz, or the Firm Balch and Bigham.
5. The entire personnel file for Scott McAfee while he served as the Inspector General;
6. All documents related to the appointment of Christopher Anulewicz in his capacity of Special Assistant Attorney General; including all invoices and communications.
7. Any evidence of any type or character that bears upon and/or relates to any of the claims that are described herein.

Failure to preserve the evidence requested can result in significant sanctions. Please consult with counsel regarding the appropriate steps that need to be taken in order to preserve this evidence.

Govern yourselves accordingly,

Stacey G. Evans

CC:    K. David Cooke, Jr. (via email only to david@gautreauxlawfirm.com)
Jarome Gautreaux (via email only to jarome@gautreauxlawfirm.com)
Josh Waites (via email only to jwaites@rfiprotects.com)

# ATTACHMENT

FILED  02/01/2022 3:55:14 PM   Clerk of Superior Court DeKalb County

State's Witness – Richard Schneider
State Office of the Inspector General

No. _____
DEKALB COUNTY SUPERIOR COURT

JANUARY TERM 2022

**THE STATE**

**vs**

**Joshua Karl Waites**

**D0287257**

**Count 1: False Statements and Writings, O.C.G.A. § 16-10-20**
**Count 2: Forgery in the First Degree, O.C.G.A. § 16-9-1(b)**

# No

_____ Bill.   (Malicious prosecution)
                                              Unanimous vote

_____ Foreperson.

02/01/2022 12:43:51 PM
_____ Date.

The Defendant, Joshua Karl Waites,
waives copy of the Indictment, list of
witnesses, full panel, formal
arraignment, and pleads

_____.

This the _____ of
_____20____.

_____
Prosecuting Attorney

_____
Defendant's Attorney

_____
Defendant

STATE OF GEORGIA, COUNTY OF DEKALB

**BILL OF INDICTMENT**

IN THE SUPERIOR COURT OF SAID COUNTY,

The Grand Jurors **(GROUP A)** selected, chosen and sworn for the County of DeKalb to wit:



## COUNT 1

The GRAND JURORS aforesaid, in the name of and on behalf of the citizens of the State of Georgia, charge and accuse **JOSHUA KARL WAITES** with the offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, for that the said accused, in the County of DeKalb and the State of Georgia, on or about July 15, 2015, did knowingly and willfully use a false writing, to wit: a State of Georgia Standard Application for Employment, knowing the same to contain a false statement, to wit: that said accused had achieved the education level of AAS, in a matter within the jurisdiction of the Department of Revenue, a department of state government, contrary to the laws of said State, the good order, peace, and dignity thereof.

The crime alleged does not fall outside of the limitations on prosecution because, pursuant to O.C.G.A. § 17-3-2, the crime was unknown until at least January 24, 2020.

3

<u>**COUNT 2**</u>

The Grand Jurors aforesaid, in the name of and on behalf of the citizens of the State of Georgia, further charge and accuse **JOSHUA KARL WAITES** with the offense of **FORGERY IN THE FIRST DEGREE**, in violation of **O.C.G.A. § 16-9-1**, for that the said accused, in the County of DeKalb and the State of Georgia, on or about September 24, 2019, did, with the intent to defraud, knowingly alter a writing other than a check, to wit: an e-mail from the Executive Director of the Prosecuting Attorneys' Council, in such a manner that the writing as altered purports to have been made by another person and by authority of one who did not give such authority, Peter Skandalakis, and said accused did utter and deliver said writing to the Georgia Department of Revenue, contrary to the laws of said State, the good order, peace, and dignity thereof.

**CHRISTOPHER M. CARR**
**Attorney General**

4

# Exhibit 3



## GEORGIA DEPARTMENT OF LAW

**CHRISTOPHER M. CARR**
ATTORNEY GENERAL

2 Martin Luther King, Jr. Drive, S.E.
Suite 356
Atlanta, Georgia 30334

www.law.ga.gov
(404) 656-3300

Direct Dial: (404) 458-3875
Fax: (404)  463-8683
Email: bmcgowan@law.ga.gov

**CERTIFIED MAIL NO. 7018 3090 0001 8521 0265**
**RETURN RECEIPT REQUESTED**

November 5, 2021

Joshua Karl Waites

████████████████████

Re:    DeKalb County proposed bill of indictment

Dear Mr. Waites:

Pursuant to O.C.G.A. § 17-7-52, I am writing to notify you that the Attorney General's Office will be presenting evidence and a proposed bill of indictment to the DeKalb County Grand Jury on Tuesday, November 30, 2021, at 8:30 AM charging you with the offenses of false statements and writings in violation of O.C.G.A. § 16-10-20 and forgery in the first degree in violation of O.C.G.A. § 16-9-1(b). A copy of the proposed bill of indictment is enclosed.

As required by law, I am additionally informing you of the following:
  (1) The grand jury is investigating your conduct to determine if there is probable cause to conclude that you have violated one or more laws of this state;
  (2) The grand jury will begin hearing testimony on the proposed bill of indictment on Tuesday, November 30, 2021, at 8:30 AM at the DeKalb County Courthouse Administrative Building, 556 N McDonough Street, Suite 750, Decatur, GA 30030;
  (3) You may request, but cannot be compelled, to testify as a witness before the grand jury regarding your conduct; and
  (4) If you request to testify before the grand jury, you will be permitted to do so at the conclusion of the presentation of the state's case-in-chief and you may be questioned by the prosecuting attorney or members of the grand jury as are any other witnesses.

If you request to appear as a witness, you shall inform me any time prior to November 30, 2021. Should you elect to testify, please be present on November 30, 2021, at 8:30 AM. In accordance with O.C.G.A. § 17-7-52(b), I will consult with the grand jury at that time to insure that the grand jury will hear your testimony that same date. If you choose not to testify, I will advise the grand jury that it shall not consider that in any way in making its decision.

Joshua Waites
November 5, 2021
Page 2 of 2

Prior to presenting any evidence or swearing any witnesses, I will advise the grand jury of the laws applicable to the conduct of the proceedings, the relevant sections of the Code relating to the crimes charged in the indictment, and O.C.G.A. §§ 16-3-20, 16-3-21, 16-3-23.1, and 17-4-20.

If you request to testify and appear before the grand jury, the case shall proceed as in any other criminal case heard by a grand jury, except that you shall be permitted to testify at the conclusion of the State's case-in-chief and that you shall only be present in the grand jury room when you are testifying. You may be questioned by the prosecuting attorney or members of the grand jury as are any other witnesses. After you have been sworn as a witness and prior to giving any testimony, I will advise you of the following:

    (1) Your appearance before the grand jury is voluntary and you cannot be compelled to appear as a witness;

    (2) By agreeing to be sworn as a witness on the bill of indictment that will be laid before the grand jury, you will be asked to testify and answer questions and may be asked to produce records, documents, or other physical evidence;

    (3) You may refuse to answer any question or to produce records, documents, and other physical evidence if a truthful answer to the question or producing such records, documents, or other physical evidence would tend to incriminate you or would tend to bring infamy, disgrace, or public contempt upon you;

    (4) Any testimony given by you may be used against you by the grand jury or in a subsequent legal proceeding; and

    (5) If you are represented by an attorney, your attorney shall have the right to be present in the grand jury room while you are testifying, and you will be permitted reasonable opportunity to consult with your attorney outside the grand jury room.

After being sworn as a witness but prior to being asked any questions by the prosecuting attorney or the grand jurors, you may make such sworn statement as you shall desire. Your attorney shall not propound questions to you nor object to questions propounded to you on evidentiary grounds. At the conclusion of your testimony, if any, the prosecuting attorney may present rebuttal evidence and advise the grand jury on matters of law.

A court reporter will be present for the proceedings as provided in O.C.G.A. § 15-12-83.

If you have an attorney, please provide him or her with this letter and the enclosure. He or she may contact me with any questions.

Sincerely,

Blair L. McGowan
Senior Assistant Attorney General

Enclosure

State's Witness – Richard Schneider
State Office of the Inspector General

No. _____

DEKALB COUNTY SUPERIOR COURT

NOVEMBER TERM 2021

**THE STATE**

vs

**Joshua Karl Waites**

**D0287257**

**Count 1: False Statements and Writings, O.C.G.A. § 16-10-20**
**Count 2: Forgery in the First Degree, O.C.G.A. § 16-9-1(b)**

_____ Bill.

_____ Foreperson.

_____ Date.

The Defendant, Joshua Karl Waites,
waives copy of the Indictment, list of
witnesses, full panel, formal
arraignment, and pleads

_____.

This the _____ of _____
20____.

_____
Prosecuting Attorney

_____
Defendant's Attorney

_____
Defendant

STATE OF GEORGIA, COUNTY OF DEKALB

**BILL OF INDICTMENT**

IN THE SUPERIOR COURT OF SAID COUNTY,

The Grand Jurors selected, chosen and sworn for the County of DeKalb, to wit:

[Grand juror names to be listed here when provided by the DeKalb District Attorney's Office]

## COUNT 1

The GRAND JURORS aforesaid, in the name of and on behalf of the citizens of the State of Georgia, charge and accuse **JOSHUA KARL WAITES** with the offense of **FALSE STATEMENTS AND WRITINGS**, in violation of **O.C.G.A. § 16-10-20**, for that the said accused, in the County of Fulton and the State of Georgia, on or about July 15, 2015, did knowingly and willfully use a false writing, to wit: a State of Georgia Standard Application for Employment, knowing the same to contain a false statement, to wit: that said accused had achieved the education level of AAS, in a matter within the jurisdiction of the Department of Revenue, a department of state government, contrary to the laws of said State, the good order, peace, and dignity thereof.

The crime alleged does not fall outside of the limitations on prosecution because, pursuant to O.C.G.A. § 17-3-2, the crime was unknown until at least January 24, 2020.

## COUNT 2

The Grand Jurors aforesaid, in the name of and on behalf of the citizens of the State of Georgia, further charge and accuse **JOSHUA KARL WAITES** with the offense of **FORGERY IN THE FIRST DEGREE**, in violation of **O.C.G.A. § 16-9-1**, for that the said accused, in the County of Fulton and the State of Georgia, on or about September 24, 2019, did, with the intent to defraud, knowingly alter a writing other than a check, to wit: an e-mail from the Executive Director of the Prosecuting Attorneys' Council, in such a manner that the writing as altered purports to have been made by another person and by authority of one who did not give such authority, Peter Skandalakis, and said accused did utter and deliver said writing to the Georgia Department of Revenue, contrary to the laws of said State, the good order, peace, and dignity thereof.

**CHRISTOPHER M. CARR**
**Attorney General**

3

Fulton County Superior Court
***EFILED***QW
Date: 5/21/2026 10:41 AM
Che Alexander, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

JOSHUA WAITES

     **Plaintiff**

v.

CHRISTOPHER CARR, individually and in his official capacity as Attorney General of Georgia, JOHN FOWLER, individually and in his official capacity as Deputy Attorney General of the Prosecution Division of the Georgia Attorney General's Office, and BLAIR McGOWAN, individually and in her official capacity as Sr. Assistant Attor-ney General and Section Chief of the Criminal Prosecution Section of the Georgia Attorney General's Office,

     **Defendant**

Civil Action No. ___26CV007338___

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT(S): **CHRISTOPHER CARR**

You are hereby summoned and required to electronically file with the Clerk of said Court via eFileGA at https://efilega.tylertech.cloud/OfsEfsp/ui/landing or via PeachCourt at https://peachcourt.com (unless you are exempt from filing electronically) and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

Stacy G. Evans, 729 Piedmont Ave NE, Atlanta, Georgia 30308, sevans@evansbowers.com

an answer to the complaint which is hereby served on you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

This _____ day of ___5/21/2026_____, 20___.

Honorable Ché Alexander,
Clerk of Superior Court

By _____
Deputy Clerk

[Attach addendum sheet for additional parties, if needed. You must make a notation on this sheet if used.]

SC-1
Rev'd 1/25

Fulton County Superior Court
***EFILED***QW
Date: 5/21/2026 10:41 AM
Che Alexander, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

JOSHUA WAITES

**Plaintiff**

v.

CHRISTOPHER CARR, individually and in his official capacity as Attorney General of Georgia, JOHN FOWLER, individually and in his official capacity as Deputy Attorney General of the Prosecution Division of the Georgia Attorney General's Office, and BLAIR McGOWAN, individually and in her official capacity as Sr. Assistant Attor-ney General and Section Chief of the Criminal Prosecution Section of the Georgia Attorney General's Office,

**Defendant**

Civil Action No. _____26CV007338_____

## SUMMONS

TO THE ABOVE NAMED DEFENDANT(S): **JOHN FOWLER**

You are hereby summoned and required to electronically file with the Clerk of said Court via eFileGA at https://efilega.tylertech.cloud/OfsEfsp/ui/landing or via PeachCourt at https://peachcourt.com (unless you are exempt from filing electronically) and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

Stacy G. Evans, 729 Piedmont Ave NE, Atlanta, Georgia 30308, sevans@evansbowers.com

an answer to the complaint which is hereby served on you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

This _____ day of _____5/21/2026_____, 20___.

Honorable Ché Alexander,
Clerk of Superior Court

By _____
Deputy Clerk

[Attach addendum sheet for additional parties, if needed. You must make a notation on this sheet if used.]

SC-1
Rev'd 1/25

Fulton County Superior Court
***EFILED***QW
Date: 5/21/2026 10:41 AM
Che Alexander, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

JOSHUA WAITES

     **Plaintiff**

v.

CHRISTOPHER CARR, individually and in his
official capacity as Attorney General of Georgia,
JOHN FOWLER, individually and in his official
capacity as Deputy Attorney General of the
Prosecution Division of the Georgia Attorney
General's Office, and BLAIR McGOWAN,
individually and in her official capacity as Sr. Assistant
Attor-ney General and Section Chief of the Criminal
Prosecution Section of the Georgia Attorney General's
Office,

     **Defendant**

Civil Action No. _____26CV007338_____

**SUMMONS**

TO THE ABOVE NAMED DEFENDANT(S): **BLAIR MCGOWAN**

     You are hereby summoned and required to electronically file with the Clerk of said Court via eFileGA at https://efilega.tylertech.cloud/OfsEfsp/ui/landing or via PeachCourt at https://peachcourt.com (unless you are exempt from filing electronically) and serve upon the plaintiff or plaintiff's attorney, whose name, address and email address are:

Stacy G. Evans, 729 Piedmont Ave NE, Atlanta, Georgia 30308, sevans@evansbowers.com

_____

_____

an answer to the complaint which is hereby served on you. You must make your answer within 30 days after service of this summons upon you. This time excludes the day of service. If you fail to answer, the court will issue a default judgment against you for the relief sought in the complaint.

     If this action pertains to a Protective Order, the answer is to be filed and served on or before the scheduled hearing date attached.

     This _____ day of _____5/21/2026_____, 20___.

                Honorable Ché Alexander,
                Clerk of Superior Court

                By _____
                Deputy Clerk

[Attach addendum sheet for additional parties, if needed. You must make a notation on this sheet if used.]

SC-1
Rev'd 1/25

Fulton County Superior Court
***EFILED***LW
Date: 6/4/2026 2:04 PM
Che Alexander, Clerk

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

JOSHUA WAITES,

    Plaintiff,

    v.

CHRISTOPHER CARR, individually and in his
official capacity as Attorney General of
Georgia, JOHN FOWLER, individually and in
his official capacity as Deputy Attorney
General of the Prosecution Division of the
Georgia Attorney General's Office, and BLAIR
McGOWAN, individually and in her official
capacity as Sr. Assistant Attorney General
and Section Chief of the Criminal Prosecution
Section of the Georgia Attorney General's
Office,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action
File No.: 26CV007338

### AFFIDAVIT OF PRIVATE PROCESS SERVER

My name is Jeff Thomas. I am a citizen of the United States of America, over 21 years of age, I am not an employee to either party of this case, nor do I have an interest in the outcome of this action.

On the 1st day of June 2026, I served John Fowler, Deputy Attorney General with the SUMMONS, VERIFIED COMPLAINT, VERIFICATION, and EXHIBITS, by handing them to Wright Banks, Deputy Attorney General, who was authorized to accept service for John Fowler, Deputy Attorney General at 40 Capitol Square Southwest, Atlanta, GA 30334.

6/3/26
Date

_____
Jeff Thomas

Subscribed and sworn to before me,
This 3rd day of June 2026

_____
Notary Public

Fulton County Superior Court
***EFILED***LW
Date: 6/4/2026 2:04 PM
Che Alexander, Clerk

**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

JOSHUA WAITES,

    Plaintiff,

v.

CHRISTOPHER CARR, individually and in his official capacity as Attorney General of Georgia, JOHN FOWLER, individually and in his official capacity as Deputy Attorney General of the Prosecution Division of the Georgia Attorney General's Office, and BLAIR McGOWAN, individually and in her official capacity as Sr. Assistant Attorney General and Section Chief of the Criminal Prosecution Section of the Georgia Attorney General's Office,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action
File No.: 26CV007338

## AFFIDAVIT OF PRIVATE PROCESS SERVER

My name is Jeff Thomas. I am a citizen of the United States of America, over 21 years of age, I am not an employee to either party of this case, nor do I have an interest in the outcome of this action.

On the 1st day of June 2026, I served Christopher Carr, Attorney General of Georgia with the SUMMONS, VERIFIED COMPLAINT, VERIFICATION, and EXHIBITS, by handing them to Chief Deputy Attorney General Wright Banks, who was authorized to accept service for Christopher Carr, Attorney General of Georgia at 40 Capitol Square Southwest, Atlanta, GA 30334.

6/3/26
Date

Jeff Thomas

Subscribed and sworn to before me,
This 3rd day of June 2026

Notary Public